UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| OMAYRA GIRAUD PINEIRO,<br><br>    Plaintiff(s),<br><br>v.<br><br>ORIENTAL GROUP d/b/a ORIENTAL<br>BANK & TRUST,<br><br>    Defendant(s). | CIVIL NO. 07-2068 (DRD) |

**OPINION AND ORDER**

Pending before the Court are: (a) *Plaintiff's Motion to Set Aside Judgment*, Docket No. 97;

(b) *Oriental Bank's Opposition to "Plaintiff's Motion to Set Aside Judgment*," Docket No. 99; and

(c) *United States of America's Motion to Join Defendant Oriental Bank's Opposition to Motion for*

*Reconsideration*, Docket No. 100.[1]  For the reasons set forth below, plaintiff's motion to set aside

judgment is denied.

**Factual and Procedural Background**

The original complaint was filed on October 31, 2006 in state court and removed to this court

on November 7, 2007 by the United States of America.  This action is caused by the opening of bank

account number 1411007218 by plaintiff Omayra Giraud Piñeiro ("Plaintiff" or "Giraud") at Oriental

Bank and Trust ("Oriental"), on October 3, 2002, and the amount of $30,000.00 deposited in

plaintiff's bank account with Oriental by her father Aureliano Giraud Padró on March 4, 2004.

At the time that plaintiff opened her bank account with Oriental, the contract used by the

bank was entitled the "*Consumer Deposit Account Agreement*."  *See Certificate of Authentication*,

---

[1]    The record shows that the *United States of America's Motion to Join Defendant Oriental Bank's Opposition to Motion for Reconsideration* was authorized by the Court on July 10, 2014, Docket No. 101.

Docket No. 86-2, ¶¶ 3-10.  As of this date, Oriental nor plaintiff have provided a copy of the original *Consumer Deposit Account Agreement* signed by plaintiff on October 3, 2002.  Oriental, however, has provided "a true and exact copy of the '*Consumer Deposit Account Agreement*' used by Oriental Bank and Trust at the time Mrs. Giraud Piñero [sic] opened her account at Oriental Bank and Trust." *See* Docket No. 86-2, ¶ 9.

The following facts summarized below, were stipulated by the parties.  *See Joint Motion with Stipulated Material Facts*, Docket No. 86-1, originally filed on December 13, 2011.

On or about February 2004, Oriental "was served with an administrative subpoena issued by the United States requesting that all accounts for certain individuals and corporations, be provided to them."  *See* Docket No. 86-1, ¶ 1.[2]  Oriental complied with the terms of the subpoena, notwithstanding "that all business' accounts has [sic] already been closed and that Oriental Bank and Trust has already made the decision to close the accounts of Mr. Aureliano Giraud, his partnerships, corporations, and those of his designees and representatives, and family member [sic] but that, given these instructions, Oriental Bank and Trust will not implement the latter decision."  *See* Docket No. 86-1, ¶ 4.

"On March 4, 2004 Mr. Aureliano Giraud Padró issued check number 1928, in the amount of $30,000.00, from his account at Oriental Bank and Trust and made it payable to 'Cash.'"  *See* Docket No. 86-1, ¶ 5.  On that same date, that is, "March 4, 2004 Mrs. Giraud visited an Oriental Bank and Trust branch and requested the withdrawal of most of the funds in her account by way of

---

[2]    The record shows that on December 13, 2011, counsel for plaintiff, Oriental and the United States of America filed a *Joint Motion with Stipulated Material Facts* under Docket No. 86-1.  The Court finds that the stipulated facts subject of the joint motion are critical to plaintiff's request to set aside judgment, as the *Opinion and Order* entered by the Court on September 30, 2013 and filed under Docket No. 95, is solely based on the facts stipulated by the parties herein.

a Manager's Check." *Id.*, ¶ 6. "Oriental Bank and Trust's Compliance Department did not authorize the withdrawal requested by Mrs. Giraud and Mr. [Oscar] Cirilo [Compliance Officer of Oriental] immediately contacted Mr. Yant [Special Agent Todd Yant] and disclosed to him the transaction that Mrs. Giraud intended to execute and that Oriental Bank and Trust did not allow." *Id.*, ¶ 7.

On March 9, 2004, "IRS Task Force Agent, Mr. Ocasio, requested that Oriental Bank and Trust revert the transaction where Mr. Giraud Padró deposited the sum of $30,000.00 in his daughter's (Mrs. Omayra Giraud) bank account and that the full amount of the funds be delivered to the United States of America in compliance with the Seizure Warrant." *See* Docket No. 86-1, ¶ 9. "The only funds seized by the United States were the $30,000.00 that Mr. Aureliano Giraud Padró transferred to Omayra Giraud's bank account through a check made payable to 'Cash' from his account #14110039113 at Oriental." *Id.*, ¶ 10. "On March 9, 2004 Oriental Bank and Trust delivered to Mr. Ocasio, four Manager's checks (#14582, 14576, 14578 and 14575) in compliance with the Seizure Warrant and with Mr. Ocasio's instructions." *Id.*, ¶ 11.

"On April 5, 2004 Oriental Bank and Trust notified Mrs. Omayra Giraud with the statement of her bank account (account Number 1411007218) reflecting all transactions in her account from March 6, 2004 to April 5, 2004, which included the reversion of the $30,000.00 deposit from her bank account (#1411007218) to her father's bank account (#1411003913). (Exhibit 8)." *See* Docket No. 86-1, Exhibit No. 1, *Declaration of Desiree Meléndez Zayas, Assistance Compliance Officer, Oriental Bank and Trust*, executed on December 13, 2011.

Thereafter, "[o]n April 29, 2004, and pursuant to 19 U.S.C. § 1607(a) and 18 U.S.C. § 983(a), the Drug Enforcement Agency ("DEA") sent written notice of this seizure by certified mail, return receipt requested, to Aureliano Giraud-Padró, at Bo. Carrizales, Carr. 493 Km. 1.0, Hatillo,

3

P.R. 00659." *See* Docket No. 86-1, ¶ 13. However, "[o]n May 10, 2004 the U.S. Postal Service returned the notice stamped 'RETURNED TO SENDER,' No Such Number." *Id.*, ¶ 14. On that same date, that is, April 29, 2004, the same notice was mailed to Oriental. *See* Docket No. 86-1, ¶ 15. The notice of seizure of the property was duly published in The Wall Street Journal and The San Juan Star for three successive Mondays: May 10, 17, and 24, 2004, "for the amount of $43,231,94 [sic] that was delivered by Oriental, in compliance with the Seizure Warrant, and that was the balance in account # 1411003913 that Mr. Giraud Padró kept in Oriental." *Id.*, ¶ 16. The deadline to file a claim of the property pursuant to the published notice was June 3, 2004., "or if mailed notice was not received, June 23, 2004." *Id.*, ¶ 16. "In addition, the published and mailed notices explained the option of filing a petition of remission or mitigation." *Id.*

Notwithstanding, "[n]o one made a claim for the property seized within the thirty (30) days from the date of publication of the Notice of Seizure or within thirty five (35) days from the date the Personal Seizure Notices were mailed by the United States' Government." Docket No. 86-1, ¶ 17.

The same notification procedure was followed again on August 4, 2004, that is, "the DEA sent written notice of this seizure by certified mail, return receipt requested, to Aureliano Giraud-Padró, Bo. Carrizales, Carr. 493, Km. 1.1, Hatillo, PR 00659." *See* Docket No. 86-1, ¶ 18. "This notice provided Aureliano Giraud-Padró until September 8, 2004, to file a claim." *Id.* "On August 23, 2004, the U.S. Postal Service returned the notice stamped 'RETURNED TO SENDER,' (Illegible)." *Id.* "After confirming Aureliano Giraud-Padró's current address, on August 4, 2004, pursuant to Title 19 U.S.C. § 1607(a) and 18 U.S.C. § 983(a), the DEA sent written notice of this seizure by certified mail, return receipt requested, to Aureliano Giraud-Padró, P.O. Box 142822, Arecibo, PR 00614." *Id.*, ¶ 19. "This notice provided Aureliano Giraud-Padró until September 8,

4

2004, to file a claim." *Id.* "On August 10, 2004, Mrs. Judith Piñero, signed in the 'Signature' block accepted delivery of this notice." *Id.* "Mrs. Omayra Giraud did not receive written notice of the seizure from DEA or IRS on March 9, 2004, or August 4, 2004." *Id.*, ¶ 20.

As to Oriental's bank statements, the record shows that plaintiff failed to contest the declaration under penalty of perjury given by Ms. Desiree Meléndez Zayas, Assistant Compliance Officer of Oriental Bank and Trust, on December 13, 2011, wherein Oriental Bank and Trust specifically states that on April 5, 2004, plaintiff was notified with the statement of her bank account (#1411007218) showing all the bank transaction from March 6, 2004 to April 5, 2004, "which included the reversion of the $30,000.00 deposit from her bank account (#1411007218) to her father's bank account (#1411003913)." *See* Docket No. 86-1, Exhibit No. 1, ¶ 25. Ms. Meléndez' Statement further states that "[t]he first notice of any claim made by Mrs. Omayra Giraud to Oriental Bank and Trust, regarding the reversion of the $30,000.00 deposit from her account (#1411007218) to her father's bank account (#1411003913) was made by her [plaintiff] on December 13, 2004 and received on December 16, 2004 in the Oriental Bank and Trust Vista Azul Shopping Center Arecibo branch." *See* Docket No. 86-1, Exhibit No. 1, ¶ 26.

The record further shows that on September 3, 2004, Mr. Areliano Giraud Padró executed a *Waiver and Agreement to Forfeit by Potential Third Party Claimant* filed under Criminal No. 03-361 (JAF), Docket No. 446-2, and the *United States' Motion to Dismiss*, Docket No. 89-1. The September 4, 2004 Waiver, which was executed after the amount of $30,000.00 was transferred from Mr. Giraud Padró's account to the account of Omayra Giraud Piñeiro, on March 4, 2004, also includes all funds deposited under the name of Mr. Aureliano Giraud Padró, his wife Mrs. Nilda Piñeiro Noriega, as well as Aureliano and Elliot Giraud Piñeiro, sons of Mr. Giraud

Padró, with Oriental Bank and Trust, Account No. 1411003913.   The Court notes, however, that since early in the year 2004, "Oriental Bank and Trust has already made the decision to close the accounts of Mr. Aureliano Giraud, his partnerships, corporations, and those of his designees and representatives, and family member [sic] but that given these instructions [the administrative subpoena issued by the United States on or about February 2004], Oriental Bank and Trust will not implement the latter decision."  *See* Docket No. 86-1, ¶ 4.   Hence, any transfer of funds made by Mr. Aureliano Giraud Padró on March 4, 2004, is null and void under the *Seizure Warrant* issued in Criminal No. 03-361 (JAF), on March 9, 2004, *see* Docket No. 86-1, Exhibit No. 4, and the September 3, 2004 *Waiver and Agreement to Forfeit by Potential Third Party Claimant* filed in Criminal No. 03-361 (JAF) under Docket No. 446-2, and the *United States of America's Motion to Dismiss*, Docket No. 89-1.

"On September 29, 2004, after no legal claims has [sic] been filed or properly executed after the statute of limitations had run out for the filing of claims, the DEA administratively forfeited the Oriental Bank and Trust, Acct. #14111003913 in the name of Aureliano Giraud Piñero, VL: $43,231.94, to the United States pursuant to 19 U.S.C. § 1609."   *See* Docket No. 86-1, ¶ 21.

"On December 13, 2004 Mrs. Omayra Giraud made a written claim against Oriental because on March 5, 2004 she deposited in her checking account at Oriental Bank and Trust the sum of $30,000.00 and that the deposit was reversed." *See* Docket No. 86-1, ¶ 22.

On September 30, 2013, the Court entered an *Opinion and Order*, Docket No. 95, granting Oriental's *Motion for Summary Judgment and Memorandum in Support Thereof*, Docket No. 85, and the *United States' Motion to Dismiss*, Docket No. 89.   The Court also dismissed with prejudice as moot, Oriental's *Third Party Complaint*, Docket No. 9-2.

6

## Applicable Law and Discussion

It is well recognized that "[a] motion for reconsideration. . . certainly does not allow a party to introduce new evidence or advance new arguments that could or should have been presented to the district court prior to judgment." *Marks 3-Zet-Ernst Marks GMBH & Co. KG v. Presstek, Inc.*, 455 F.3d 7, 15-16 (1st Cir. 2006). Thus, a motion for reconsideration cannot be used as a vehicle to re-litigate matters previously adjudicated. *See Standard Química De Venezuela v. Cent. Hispano Int'l, Inc.*, 189 F.R.D. 202 n.4 (D.P.R. 1999).

Motions for reconsideration are entertained by courts if they seek to correct manifest errors of law, present newly discovered evidence, or when there is an intervening change in law. *See Prescott v. Higgins*, 538 F.3d 32, 45 (1st Cir.2008); *see also Rivera Surillo & Co. v. Falconer Glass Indus., Inc.*, 37 F.3d 25, 29 (1st Cir.1994)(citing *F.D.I.C. Ins. Co. v. World University, Inc.*, 978 F.3d 10, 16 (1st Cir. 1992). A motion for reconsideration is unavailable if said request simply brings forth a point of disagreement between the court and the litigant, or rehashes matters already properly disposed of by the Court. *See e.g., Waye v. First Citizen's Nat'l Bank*, 846 F.Supp. 310 (M.D. Pa.1994).

## Timeliness of Plaintiff's Motion to Set Aside Judgment

In the instant case, the Court will treat *Plaintiff's Motion to Set Aside Judgment*, as a motion under Rule 59(e) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), which provides as follows: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." In the instant case, the Court's *Opinion and Order* was entered on September 30, 2013. *See* Docket No. 95. Hence, the Court finds that plaintiff's motion to set aside judgment is timely, as it was filed within 28 days from the date of the entry of judgment. *See* Docket No. 97.

7

**Plaintiff's Grounds to Set Aside Judgment**

Generally, plaintiff alleges that in the *Opinion and Order*, the Court:

1.  "[M]ake [sic] several conclusions that we respectfully consider that are not consistent with what transpired in instant case."  Docket No. 97, ¶ 7.

2.  Plaintiff alleges that the Court erred when finding that "Oriental's Motion for Summary Judgment was unopposed.  It is important to point out that Oriental's motion is being re-filed and that the original Motion for Summary Judgment was opposed and a Sur-Reply was also filed."  Docket No. 97, ¶ 8.  "There is [sic] no important material differences in both motions and therefore Plaintiff understands that the opposition filed should have prevailed and in it there were more than enough arguments and proof that the Summary Judgement should have not prosper."  *Id*.

3.  Oriental's second motion for summary judgment makes "reference to a standard contract, that is not necessarily the one signed by Plaintiff, that [O]riental understood that should be equal to or similar to the one they assume Plaintiff signed."  Docket No. 97, ¶ 9.  "With it Oriental tries to create a new prescription period that would completely violates state and federal prescription period of various legal claims."  *Id*.

4.  "Even worse the contract provided by Oriental is a Standard Term contract w[h]ere one party have much more power than the other and said party determine[s] all the terms and conditions in a 'take it or leave it basis.'"  Docket No. 97, ¶ 10.  "Said contract [is] usually kept in the bank's possession, however, in this case the Bank cannot find it."  *Id.*  "Oriental admitted ... in its Answer to the Complaint that a Docket No. 97,  Contract existed, however they now do not have it."  Docket No. 97, ¶ 11.

5.  The Court found that "[o]n April 5, 2004 Oriental delivered to the Plaintiff the monthly statement of her bank account identifying all transactions in the account from March 6, 2004 through April 5, 2004, which included the transaction where the $30,000.00 deposited in her account were reverted to Plaintiff's father account."  Docket No. 97, ¶ 14.  "Plaintiff respectfully disagree with this Honorable Court since this statement is false."  *Id.*  "Oriental never notified Plaintiff that her money was being reverted to her father's account."  *Id.*  "That fact never happened and is precisely the reason why she lost her money and still today have not been able to recover it."  *Id.*  "Oriental only sent Plaintiff a very simple statement w[h]ere they marked a miscellaneous debit ("Debito Miscelaneo") of $30,000.00.  *See* Docket 10-2."  *Id.*

6.  "This Court understands that said agreement [*Consumer Deposit Account Agreement*] created a timed [sic] barred prescription period that is much more prejudicial to its

clients." Docket No. 97, ¶ 16. "It is our position that a private entity does not have the power or authority to limit the prescription periods legislated in the state and federal congresses with a simple Standard Term or Adhesion Agreement." *Id.*

7.      Plaintiff makes reference to paragraph 34 of the *Consumer Deposit Account Agreement*, which states: "If you do not notify us within 60 days after we sent or made available the earliest statement that gave an indication of the problem, you will be responsible for any loss that your notifying us could have prevented, whether or not we were appropriately careful." Docket No. 97, ¶ 17. "This citation of the contract obviously does not apply to the instant case." *Id.* "In this case the Bank was very well notified of the problems or inconsistency in Plaintiff account and therefore a notification by Plaintiff was not obviously required." *Id.* "Through [sic] plenty of the facts admitted by Oriental, it is more than obvious that Oriental knew and participated in the taking of the money of Plaintiff." *Id.*

8.      "Then, this Honorable Court sustained in its Opinion and Order that Plaintiff did not make a claim until December 13th, 2004. ("It is also uncontested that Plaintiff's first made a claim to Oriental regarding the reversed transaction by letter dated December 13, 2004.") Plaintiff sustains that said [sic] at paragraph is false or at the least, there is controversy as to the date when she firs made a claim to Oriental." Docket No. 97, ¶ 18. *See also* Docket No. 97, ¶¶ 19, 20.

9.      "After Plaintiff argued with Oriental without any success, she properly exhausted the administrative remedies by filing a Complaint at the Commissioner of the Financial Institutions." Docket No. 97, ¶ 21. "Once that was exhausted Plaintiff correctly filed her complaint. The prescription period was never time barred since said term was properly tolled." *Id.*

10.     "Plaintiff sustains that Oriental breached its contract since Oriental did not provided notice or an explanation about the reversal of the $30,000.00 deposit." Docket No. 97, ¶ 23. "Only included a Miscellaneous Deposit in a Statement." *Id.* "Therefore, Plaintiff was unaware that the funds were seized by the United States and as a consequence Plaintiff was completely impeded to recover such." *Id.*

11.     "Moreover, Oriental cannot rely in a lack of notification by Plaintiff to claim the lost money, since Oriental itself first completely breached its Contract." Docket No. 97, ¶ 24. "The Exceptio Non Adimpleti Contractus[3] doctrine states that a breaching party cannot claim a breach from the other contractual party." *Id.* Therefore Plaintiff cannot be held liable for failure to notify of a statement error when Oriental itself did

---

[3]     "*Exceptio Non Adimpleti Contractus.* An exception in a contract action involving mutual duties or obligations, to the effect that the plaintiff may not sue if the plaintiff's own obligations have not been performed." *See* Garner, Bryan A., *Black's Law Dictionary,* Tenth Edition, p. 682.

not perform their side of the contractual agreement." *Id.*

Lastly, plaintiff Omayra Giraud Piñeiro argues that she originally opposed Oriental's first motion for summary judgment, hence, "[t]here is [sic] no important material differences in both motions and therefore Plaintiff understands that the opposition filed should have prevailed and in it there were more than enough arguments and proof that the Summary Judgement should have not prosper." *See* Docket No. 97, ¶ 8.

Oriental vehemently opposed *Plaintiff's Motion to Set Aside Judgment*, on the grounds that: (a) plaintiff's motion to set aside judgment was filed tardy under Rule 59(e); (b) "Oriental somehow contracted out of a statute of limitations period when it entered into the standard account deposit agreement with the plaintiff, that said agreement was a contract of adhesion," (c) "Oriental never notified her that the $30,000.00 deposited in her account had been reverted to her father's account," and (d) plaintiff "did not make her first claim against Oriental on December 13, 2004." *See* Docket No. 99.

The Court granted the United States' request to join Oriental's opposition to plaintiff's motion for reconsideration. *See* Docket entries No. 100 and 101. Our analysis follows.

### Timeliness of the Motion to Set Aside Judgment under Rule 59(e)

Oriental's argument as to the untimeliness of plaintiff's motion to set aside judgment has been ruled, *see Infra* 7. Rule 59(e) provides that a motion to set aside judgment shall be filed within 28 days from the entry of judgment. In the instant case, the record shows that the *Judgment* was entered on September 30, 2013, Docket No. 96, and plaintiff's motion was filed on October 28, 2013 at 11:50 p.m. AST, pursuant to the Notice of Electronic Filing of CM/ECF, Docket No. 97. Hence, the Court finds that plaintiff's motion is timely, as it was filed on the 28th day from the entry of

judgment, as provided by Rule 59(e).

## Unopposed Motion for Summary Judgment

Plaintiff alleges that the Court erred when granting Oriental's motion for summary judgment as being unopposed.  The Court finds that plaintiff's argument is meritless, and it is definitely plaintiff's last desperate grasp to get yet another bite to the apple.  It is well settled that even when a party does not oppose a motion for summary judgment, the court is obliged to entertain the summary judgment request on its merits.

In *Aguiar-Carrasquillo v. Agosto-Alicea*, 445 F.3d 19, 25 (1st Cir.2006), the Court held:

> [E]ntry of a summary judgment motion as unopposed does not automatically give rise to a grant of summary judgment. Instead, "**the district court [is] still obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate**." *Mullen v. St. Paul Fire and Marine Ins. Co.*, 972 F.2d 446, 452 (1st Cir.1992) (citation and internal quotation marks omitted). In this appeal, plaintiffs contend that the district court's grant of summary judgment was not legally appropriate.
>
> Summary judgment is properly granted if the movant can demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  **It is well-settled that "before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law**." *López v. Corporación Azucarera de Puerto Rico*, 938 F.2d 1510, 1517 (1st Cir.1991) (citation and internal quotation marks omitted).  (Emphasis supplied).

In the instant case, the Court entertained Oriental's motion for summary judgment on its merits, and further, the findings of the Court are based on the record and the joint stipulated material facts filed by the parties under Docket No. 86.  Hence, the Court disagrees with plaintiff's argument, and find the same as frivolous and totally unsupported by the record.

## The Contract

The core of this case is that plaintiff nor Oriental have provided a copy of the original *Consumer Deposit Account Agreement* executed by plaintiff Omayra Giraud Piñeiro and Oriental, on October 3, 2002.  The second critical issue is the statute of limitations to claim the return of property in a forfeiture proceeding, which is completely unrelated to the claims procedure that plaintiff may have under the *Consumer Deposit Account Agreement* executed by the plaintiff and Oriental, on October 3, 2002.

The issue, however, is more profound, as the Court based its *Opinion and Order* on the *Joint Motion with Stipulated Material Facts*, Docket No. 63, which is also the same document attached as Exhibit No. 86-1, and Exhibits, of Oriental's first and second motions for summary judgment, which was also signed by plaintiff's counsel, Iván Pasarell Jové, on December 13, 2011 (originally filed on December 13, 2011 under Docket No. 63).  The Court notes, however, that the joint stipulated material facts nor the exhibits attached thereto, have been contested by plaintiff, as of this date.  Hence, it is impermissible, at this stage of the proceedings, to pretend to back out from plaintiff's own stipulated material facts.  The Court will not allow plaintiff to "play fast and loose with the court."  *See Patriot Cinemas, Inc. v. General Cinemas Corp., et al.*, 834 F.2d 208, 212 (1st Cir.1987).

## The Stipulation and its Legal Consequences

In *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 32 (1st Cir.2007) and *Vaquería Tres Monjitas, Inc. v. Comas*, 980 F.Supp.2d 65, 74 (D.P.R.2013), *appeal dismissed*, (1st Cir. 13-2323 (October 16, 2013)), the Court encountered a similar situation.  In order to avoid being repetitious, the Court will cite directly from the opinion of *Vaquería Tres Monjitas*, 980 F.Supp.2d at 74:

12

The Court further reminded the parties the repercussions of entering into a stipulation, *citing Christian Legal Society Chapter of the University of California, Hastings College of the Law a/k/a Hastings Christian Fellowship v. Martínez, et al.*, 561 U.S. 661 (2010); *Chao v. Hotel Oasis, Inc., et al.*, 493 F.3d 26, 31–32 (1st Cir.2007) (the court refused to disregard the stipulation reached by counsel "based on the general principle that 'stipulations of attorneys made during a trial may not be disregarded or set aside at will' "). . . .  In *Chao*, the Court held that the stipulations are highly regarded in our judicial system and "[o]nce entered, parties are 'not generally free to extricate themselves ... [unless] 'it becomes apparent that it may inflict a manifest injustice upon one of the contracting parties.' " 493 F.3d at pages 31–32. *Id*.

In the instant case, the parties filed a joint motion with stipulated material facts voluntarily. Plaintiff has failed to show why the joint stipulated material facts should be set aside.  Plaintiff has also failed to present new evidence that may warrant that said stipulated facts be set aside or why the Court erred on relying on the stipulated facts.  Plaintiff's argument alleging that some findings of facts entered by the Court are false, is totally unfounded, as they are based on the stipulation of facts, and the record.  Furthermore, after seven years of litigation, the Court finds that plaintiff's argument at this stage of the proceedings, is untimely.

**Relief from a Judgment or Order under Rule 60(b)**

The Court is cognizant that plaintiff's motion to set aside judgment was filed under Rule 59(e).  However, the Court refers to Rule 60(b) for grounds to set aside a judgment, that is: (a) "mistake, inadvertence, surprise, or excusable neglect;" (b) "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);" (c) "fraud .... misrepresentation, or misconduct by an opposing party;" (d) "the judgment is void;" (e) "the judgment has been satisfied ....;" (f) "any other reason that justifies relief."

13

In the instant case, plaintiff has failed to meet any of the factors under Rule 60(b).  Indeed the only factor that plaintiff did comply was the timely motion under Rule 59(e).  Plaintiff is attempting to reverse the facts that she prior thereto agreed voluntarily.  Moreover, plaintiff is now impaired by the doctrine of its own acts ("doctrina de los actos propios") and/or the doctrine of impediment ("doctrina de impedimento"), to even attempt to change the record.  *See Vaquería Tres Monjitas, Inc., et al. v. Comas, et al.*, 992 F.Supp.2d 39,43 (D.P.R.2013), citing *Ceramic Enterprises, Inc. v. Dexion Incorporated*, 994 F.Supp. 97, 105 (D.P.R.1998) ("If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed.  If the words appear contrary to the evident intention of the contracting parties, the intention shall prevail.").  In sum, the plaintiff "is now judicially stopped from acting against [her] own actions, that is, ... cannot untie what it tied under the terms and conditions" of the [joint stipulated material facts].  *Id.*  Unless plaintiff is able to produce newly discovered evidence that could not be reasonably discovered in time to move for new trial.  Furthermore, the arguments presented by plaintiff in her motion to set aside judgment are a rehash of prior arguments, and bare conclusory allegations which are unsupported by the record.  Hence, plaintiff's motion to set aside judgment is denied.

On the merits, the Court totally agrees with the reasoning of Oriental Bank and Trust in its memorandum opposing plaintiff's motion to set aside judgment filed under Docket No. 99, pages 9-11, which are reiterated herein.

(iv) **Plaintiff's alleged lack of notice of the reversion of funds in her account**[4]

---

[4]     (Emphasis in the original).

Plaintiff also argues that she was never notified by Oriental that the $30,000.00 deposited in her bank account had been reverted. Yet, in her argument she fails to consider that in this case she stipulated that on March 4, 2004, the same day the $30,000 were deposited into her bank account, "she visited an Oriental Bank and Trust branch and requested the withdrawal of most of her funds in her account by way of a Manager's Check" and that "Oriental Bank and Trust's Compliance Department did not authorize the withdrawal requested [by her]." (Statements No. 6 and 7 at Docket No.63). Moreover, she states in her motion that "Oriental never notified Plaintiff that her money was being reverted to her father's account" yet failed to mention that she stipulated that "[o]n December 13, 2004 Mrs. Omayra Giraud made a written claim against Oriental because on March 5, 2004 she deposited in her checking account at Oriental Bank and Trust the sum of $30,000.00 and that the deposit was reverted." (our emphasis) See, Statement No. 22 at Docket No. 86 and Exhibit 16 of Docket No. 63). Thus, since she stipulated having made a claim precisely because the deposit in her account was reversed by Oriental she is barred from now arguing that she was never notified of the reversion of such funds. More so, when she admits having received her bank account statement indicating the $30,000.00 debit made to her account.

Plaintiff also argues that she did not have to provide Oriental notice "of any problem" with her account because "it was more than obvious that Oriental knew and participated in the taking of the money of Plaintiff." This argument is contrary to the express terms and conditions agreed to by the parties. Contractually it was plaintiff's duty to object to any transaction posted in her bank account within 60 days from receiving the bank statement. Moreover, there exists no duty, contractually or in law, for Oriental to provide notice to its clients of transactions never questioned or notified to Oriental by the client. (See, Par. 34, Account Agreement) [FN.1][5]

---

[5]       FN.1 in the original reads as follows:

The Account Agreement provides:

> *BANK STATEMENTS.  You will promptly examine and reconcile each statement we send or make available.  You will notify us immediately of any problem, such as forgery, unauthorized endorsement or debit, or alteration, that you find or reasonably should have found.  If you do not notify us within 60 days after we sent or made available the earliest statement that gave an indication of the problem, you will be responsible for any loss that your notifying us could have prevented, whether or not we were appropriately careful.  If an item was altered or drawn without authorization, and it was done so cleverly that a reasonable person could not detect it, and we were not negligent in any way, you will not hold us responsible for the loss.  (Par. 34, Agreement).*

In her motion plaintiff also accuses the court of basing its decision on a "false" statement.  She contends that there exists controversy as to the date when she first made a claim to Oriental.  Yet, the only record in this case of a claim made by the plaintiff to Oriental is that she made a claim to Oriental on December 13, 2004. (See, Statement No. 22 at Docket No. 86 and Exhibit 16 of Docket no. 63). This is a fact stipulated by the parties and plaintiff never submitted any evidence supporting her argument that she made other claims to Oriental regarding the reversion of the funds she had deposited into her account. Even at this stage, all plaintiff submitted to the Court to support the allegation that she had made other claims to Oriental is the unsupported statement by her counsel stating that "there is controversy as to the date when she first made a claim to Oriental."  Clearly, such vacuous statements cannot be considered by the Court in adjudicating a motion for summary judgment.

The Court also expressed in its *Opinion and Order* at Docket No. 95, pages 14-18, why plaintiff's claims were dismissed under a *Waiver and Agreement to Forfeit by Potential Third Party Claimant*, Docket No. 89-1, signed by plaintiff's father, Aureliano Giraud Padró, in Criminal No. 03-361 (JAF), filed under Docket No. 446-2, and under contract law.  Said reasoning is cited below in its totality:

## Waiver and Agreement to Forfeit Property

The record in this case also shows that on September 3, 2004, Plaintiff's father executed a Waiver and Agreement to Forfeit by Potential Third Party Claimant (Waiver and Agreement), as part of Criminal No. 03-361 (JAF), by virtue of which he waived, renounced, surrendered, yielded, relinquished and abandoned any claim, right or lien and/or interest he ever had, or that he would ever have in the future, over certain property, including the funds seized from his bank account at Oriental. Through the Waiver and Agreement, Aureliano Giraud-Padró and Plaintiff's father, waived, renounced, surrendered, yielded, relinquished, abandoned and resigned any claim, right, lien and/or interest that he ever had, or ever will have in all currency in Oriental Group Account #1411000753, in his name. The currency [Fn.13][6] referred to in the waiver and agreement to forfeit signed by

---

[6]     FN.13 in the original reads as follows:

*Waiver and Agreement to Forfeit by Potential Third Party Claimant*, filed in

Giraud-Padró included the funds that were reverted from Plaintiff's bank account, which Plaintiff seeks to claim now as compensation in this action. The waiver and agreement constitutes an acknowledgement by Plaintiff's father, Giraud-Padró, that the funds seized from his bank account, which were the same funds from where he originally drew the $30,000.00 check that Plaintiff deposited in her bank account, were the product of criminal activities, and therefore, he agreed to forfeit any right or interest in those funds to the United States. Giraud-Padró also waived any constitutional or legal defense he may have had as it related to the forfeiture of the property to the United States. Such waiver and acknowledgement by Plaintiff's father bars plaintiff's claim seeking to receive from Oriental payment of the funds that had been forfeited by her father.

After the entry of an order of criminal forfeiture against a defendant in a criminal case, third-party claimants may request an ancillary hearing under 21 U.S.C. § 853(n)(2) to challenge the forfeiture. *United States v. Cunan*, 156 F.3d 110, 116 n. 7 (1st Cir.1998). Claimants must prove by a preponderance of the evidence that their interests in the property vested was superior to that of the defendant at the time of the commission of the underlying crime, or that the claimants were bonafide purchasers for value without reason to know that the property was forfeitable. *Id.*, *see* § 853(n)(6); *see also United States v. Real Property in Waterboro*, 64 F.3d 752, 756 (1st Cir.1995) (interpreting § 853(n)(6)(A)). If the court finds any of these three grounds for relief, "the court shall amend the order of forfeiture in accordance with its determination." *See* 21 U.S.C. § 853(n)(6). This hearing provides the sole means by which third-party claimants may challenge the validity of the forfeiture. *United States v. McHan*, 345 F.3d 262, 269 (4th Cir.2003), *see also* 21 U.S.C. § 853(k) (barring third-party challenges to forfeiture via intervention or parallel case). The hearing is a bench trial in equity to adjudicate claimants' interests in forfeited properties. *McHan*, 345 F.3d at 275-76. Accordingly, the proceedings are civil rather than criminal. *United States v. Lavin*, 942 F.2d 177, 182 (3d Cir.1991).

In sum, the asset forfeiture statutes provide ample resources to Plaintiff, as a purported potential claimant, to secure relief and establish the basis for the return of property seized by the United States in administrative, civil or criminal proceedings. Plaintiff failed to comply with either available options to state the

Criminal No. 03-361 (JAF) Docket No. 446-2.

claim she now asserts.

### Breach of Contract Claim

In Puerto Rico, the law recognizes that the contracting parties may execute any agreement and "establish the clauses and conditions, which they may deem advisable, provided that they are not in contravention of the law, morals, or public order." *López Torres v. González Vázquez*, 2004 PRSC 172, *see also* 31 L.P.R.A. § 3372 (1990). Contracts are perfected by the mere consent of the parties, and from that time they are binding, not only with regard to the fulfillment of what has been expressly stipulated, but also with regard to all the consequences which are in accordance with good faith, use and law. *López Torres v. González Vázquez*, 2004 PRSC 172. *See also* 31 L.P.R.A. § 3375 (1990); *In re Redondo Const. Corp.*, 411 B.R. 114, 121-22 (Bankr.D.P.R. 2009).

"[A]n agreement is clear when it can be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation..." *Borschow Hosp. & Medical Supplies, Inc. v. Cesar Castillo, Inc.*, 96 F.3d 10, 15 (1 Cir.1996) (quoting *Executive Leasing st Corp. v. Banco Popular de P.R.*, 48 F.3d 66, 69 (1st Cir.1995)). To be clear the contract has to be "sufficiently lucid to be understood to have one particular meaning ..." *Hopgood v. Merrill Lynch, Pierce, Fenner & Smith*, 839 F.Supp. 98, 104 (D.P.R.1993); *Franceschi v. Hospital General San Carlos*, 326 F.Supp.2d 257, 264 (D.P.R.2004); *Entact Services, LLC v. Rimco, Inc.*, 526 F. Supp. 2d 213, 221 (D.P.R. 2007).

"Once a court determines that the terms of a contract are sufficiently clear so that only one meaning is possible, the court cannot dwell on the 'alleged' intent of the parties at the time they entered into the contract." *Fernández-Fernández v. Municipality of Bayamón*, 942 F.Supp. 89, 94 (D.P.R.1996). "When an agreement leaves no doubt as to the intention of the parties, a court should not look beyond the literal terms of the contract." *Vulcan Tools of Puerto Rico v. Makita U.S.A., Inc.*, 23 F.3d 564, 567 (1st Cir.1994) (internal quotations omitted).

Moreover, the Court deems critical that when interpreting contracts, courts must read contract provisions in relation to one another, giving unclear provisions the meaning which arises from considering all provisions together. 31 L.P.R.A. § 3475; *Marina Aguila v. Den*

*Caribbean, Inc.*, 490 F.Supp.2d 244, 248 (D.P.R.2007). Courts should assign terms their common meanings, and any term having multiple meanings should be read in the sense that is most suitable to give it effect. 31 L.P.R.A. § 3474; *Marina Aguila*, 490 F.Supp.2d at 248; *Entact Services, LLC v. Rimco, Inc.*, 526 F. Supp. 2d 213, 221 (D.P.R. 2007). The Puerto Rico Supreme Court has stated that the obligations of the bank to its depositing clients stem from the contractual relationship between them. *P.R. Tobacco Mkt. Ass'n v. P.R. & Amer. Ins.*, 100 D.P.R. 387, 397 (1972); *A.E.E. v. Las Americas Trust Co.*, 123 D.P.R. 834, 841 (1989); *Lage v. Central Federal Savings & Loan Association*, 108 D.P.R. 72, 79-81 (1978).

The Complaint in this case is silent with respect to the contractual obligation in which Plaintiff rests her claim. There is no reference made to the agreement between the parties. Yet, Plaintiff couches her claim on Oriental's failure to notify her when it decided to reverse a $30,000.00 deposit she made in her account. Plaintiff's deposit account at Oriental is governed by the terms of a "Consumer Deposit Account Agreement," a form copy of which is part of the record of the case. This agreement provides the terms and conditions under which Oriental agreed to open a deposit account for the plaintiff. [FN.14][7]

As to how the bank would notify the plaintiff of the transactions in her account, the Agreement is clear that the mechanism would be through the delivery of bank statements. In this regard, the Agreement provides:

> **BANK STATEMENTS**. You will promptly examine and reconcile each statement we send or make available. You will notify us immediately of any problem, such as forgery, unauthorized endorsement or debit, or alteration, that you find or reasonably should have found. If you do not notify us within 60 days after we sent or made available the earliest statement that gave an indication of the problem, you

---

[7]     FN.14 in the original reads as follows:

The agreement provides that "it is binding between you and us for a deposit account" (Par. 2 Agreement), that it is governed by the laws of Puerto Rico (Par. 9 Agreement), and that all disputes arising from the agreement may be tried before a judge only that the plaintiff waived her right to a jury trial (Par. 10 Agreement).

will be responsible for any loss that your notifying us
could have prevented, whether or not we were
appropriately careful. If an item was altered or drawn
without authorization, and it was done so cleverly that
a reasonable person could not detect it, and we were
not negligent in any way, you will not hold us
responsible for the loss. (Par. 34, Agreement)
(Emphasis ours).

Thus, the agreement only required that Oriental notify the account
holder, through bank statements, of the transactions affecting the
account and then imposes the burden on the account holder to notify
the bank within sixty (60) days from receipt by the client of the
account statement of any unauthorized transactions. With respect to
the $30,000.00 reversal of the deposit made into her account, on
April 5, 2004 Oriental notified Plaintiff the statement of her bank
account reflecting all transactions in her account from March 6, 2005
to April 5, 2004, which included the reversion of the $30,000.00
deposit from her bank account to her father's bank account. It is also
uncontested that Plaintiff's first made a claim to Oriental regarding
the reversed transaction by letter dated December 13, 2004. That is,
the sixty (60) days required by the agreement had long expired when
she made the claim to the bank regarding the transaction. Almost two
(2) years later, on October 31, 2006, she filed the instant action in
local court. [FN.15][8]

Oriental's duty to notify Plaintiff, as the account holder, of the
transactions in her account was limited to providing her account
statements. There is no controversy between the parties that Oriental
fully complied with that obligation and provided her an account
statement following the month when the transaction in controversy
occurred. Once that notice was provided by Oriental, the burden
shifted to the Plaintiff to notify Oriental, within sixty (60) days, of
any contested transaction. She failed to timely act, and therefore, is
barred from now acting. Moreover, Plaintiff rests on a breach of
contract claim against Oriental for failing to meet its duty to notify
her of the transaction in question. Nonetheless, the agreement with
Oriental only requires the bank to notify an account statement, which

---

[8]     FN.15 in the original reads as follows:

       The Court once again emphasizes that the source (plaintiff's father account),
       providing the money to the plaintiff herein, was admitted to have an amount
       containing drug money from plaintiff's mother.

it did within the regular course of business by providing plaintiff the monthly statement account wherein plaintiff's father deposit the check that was later reversed.

The agreement between Plaintiff and Oriental also provides that the account holder will not hold Oriental liable for damages suffered from its "good faith actions on any order or other legal process". [FN.16][9]  This provision constitutes yet another separate ground exempting Oriental from liability founded on good faith reliance based on a court order or legal process. In this case, the uncontested facts show that Oriental relied, in good faith, on the instructions provided by law enforcement agent Mr. Ocasio, who requested Oriental to revert the deposit of the $30,000.00 in Plaintiff's account, and deliver the funds to the United States of America in compliance with the seizure warrant issued by the Court in Criminal No. 03-0361 (JAF). Oriental's reliance on the instructions of the agent who served the seizure warrant cannot be described as anything but in good faith reliance of a court order. After all, Oriental did not benefit in any way from following the instructions of the agent, and only did so because it believed it was required to do so. [FN.17][10] The account agreement also provides that Oriental has the discretion to accept, 17 refuse to

---

[9]    FN.16 in the original reads as follows:

The pertinent part of the Agreement reads as follows:

> LEGAL PROCESS. If an owner or authorized signer is ever involved in a legal proceeding, such as divorce, garnishment, levy, or attachment, you will not hold us [Oriental] responsible for any damage you suffer from our actions in good faith reliance on any order or other legal process. Any garnishment, levy or attachment is subject to our right to setoff. If a bankruptcy or similar proceeding is filed by or against the owner, we can place an administrative hold on part or all of the balance while we seek to have the automatic stay lifted. (Par. 21 Agreement)

[10]   FN.17 in the original reads as follows:

In this respect, the Agreement also releases Oriental when its acts in a good faith reliance that it is required by law or regulation to do so.  In particular, the Agreement provides the following:

> LAWS, REGULATIONS. We are subject to extremely detailed laws and regulations. You will not hold us liable for anything we do or decline to do based on a good faith belief that it is required by law or regulation. Some laws allow parties to 'contract out' of the law's provisions and establish their own rules. You intend this agreement to do that whenever a term of this agreement conflicts with such a law. You will abide by the rules of any clearinghouse that handles any part of a transaction. (Par. 27, Agreement).

accept or return any deposits made to the account. [FN.18][11]

## A Final Note

The Court finds that the instant complaint is close to totally constituting an exercise in futility, as plaintiff continues to pursue claims that were "clearly frivolous, unreasonable, or without foundation," after a lengthy litigation, and a detailed stipulation of material facts. *Lamboy-Ortiz, et al. v. Ortiz-Vélez, et al.*, 630 F.3d 228242 (1st Cir.2010). "A frivolous complaint, ..., is one that 'lacks an arguable basis either in law or in fact,' one that contains either 'inarguable' legal conclusions or 'fanciful' factual allegations." *R.A. Street v. Fair*, 918 F.2d 269, 272-273 (1st Cir.1990), citing *Neitzke v.Williams*, 490 U.S. 319, 327-328 (1989).

"To overcome a summary judgment motion, a plaintiff must introduce evidence that creates a 'genuine issue of material fact' as to the substance of her claims, *i.e.*, one that 'could be resolved in favor of either party' and 'has the potential of affecting the outcome of the case.'" *Vera v. McHugh*, 622 F.3d 17, 26 (1st Cir.2010).

In the instant case, the plaintiff failed to introduce the necessary evidence to overcome the

---

[11]      FN.18 in the original reads as follows:

The pertinent part of the agreement reads as follows:

> DEPOSITED ITEMS. You understand all deposits are subject to verification and correction. We can accept an item for deposit or collection only, refuse it, or return it. In receiving items, we are acting only as your agent. We have no responsibility beyond ordinary care. You will not hold us responsible for default or negligence of our correspondents or loss of items in transit. Each correspondent we use will be liable only for its own negligence. If we give you credit for an item, we can revoke it if the item is not paid. Items deposited by mail will not be considered received by us until we actually receive them. You will not hold us responsible for loss of any item until we have received it under this standard. If an item requiring endorsement is deposited without it, you authorize but do not require us to supply it. You will reimburse us for loss or expense we incur because of any missing endorsement, whether yours or another's, on a deposited item. (Par. 29, Agreement).

evidence submitted by Oriental, which was duly supported by Oriental's records and/or to present evidence to contest the admissions made by plaintiff's father, Mr. Areliano Giraud Padró in other related federal proceedings but directly intertwined with the instant proceeding.

Plaintiff's argument is based on the fact that Oriental nor his client were able to produce a copy of the original *Consumer Deposit Account Agreement* signed by plaintiff the date that she opened her bank account with Oriental.  However, plaintiff's contractual argument is still insufficient to prove that the moneys in the amount of $30,000.00 that her father deposited in plaintiff's account, rightfully belonged to plaintiff.  Particularly, when plaintiff's father had admitted otherwise.  *See Waiver and Agreement to Forfeit by Potential Third Party Claimant*, executed by Mr. Aureliano Giraud Padró on September 4, 2004, filed in Criminal No. 03-361 (JAF)[12] under Docket No. 446-2, and the *United States of America's Motion to Dismiss*, Docket No. 89-1.

Likewise, plaintiff's argument based on the ground that Oriental failed to notify her that she had 60 days to object as to any errors that may appear in the bank statement, is totally unfounded, as plaintiff failed to timely claim and prove that she did not receive the bank statement corresponding to the transactions made from March through April 2004, or any other bank statements for any other month.  Plaintiff simply relied on the argument that a copy of the original *Consumer Deposit Account Agreement* signed at the time the bank account was opened has not been produced by Oriental (nor by plaintiff).  Hence, Oriental cannot contractually prove that plaintiff failed to claim any errors on the bank statements timely pursuant to the *Consumer Deposit Account Agreement*.

---

[12]     The Court notes that Criminal No. 03-361 (JAF) was filed on December 16, 2003 against several defendants, amongst them, Messrs. Aureliano Giraud Piñeiro and Elliot Giraud Piñeiro, who are brothers of plaintiff herein, as well as Mrs. Nilda Piñeiro Noriega, plaintiff's mother.  A *Search Warrant* was issued on March 9, 2004 by the Hon. José A. Fusté in Criminal No. 03-361 (JAF), which eventually triggered the execution of the *Waiver and Agreement to Forfeit by Potential Third Party Claimant* by Mr. Aureliano Giraud Padró of several assets that appeared under his name, his wife Mrs. Nilda Piñeiro Noriega, and other individuals.

Consequently, the amount of $30,000.00 was wrongfully reversed by Oriental from plaintiff's bank account.[13]  However, a careful review of the record clearly shows otherwise.  Notwithstanding, the Court will hold its hand at this time.

### Conclusion

For the reasons set forth above, *Plaintiff's Motion to Set Aside Judgment*, Docket No. 97, is denied.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this ___ day of September, 2014.

s/Daniel R. Domínguez
DANIEL R. DOMINGUEZ
United States District Judge

---

[13]    The Court notes, that plaintiff's father, Mr. Aureliano Giraud Padró, who provided her with the money had prior knowledge of the ongoing criminal proceeding against his wife Mrs. Nilda Piñeiro Noriega, and his two sons, Aureliano and Elliot Giraud Piñeiro, Criminal No. 03-361 (JAF), filed on December 16, 2003, which triggered thereafter, the execution of the *Waiver and Agreement to Forfeit by Potential Third Party Claimant* on September 4, 2004, in Criminal No. 03-361 (JAF), filed under Docket No. 446-2, and the *United States of America's Motion to Dismiss*, Docket No. 89-1.